# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARBARA A. JONES, )
)
       Plaintiff, )
)
         v. ) Civil Action No. 07-204 Erie
)
POLK CENTER, )
)
       Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

    The Plaintiff, Barbara A. Jones ("Plaintiff"), who is preceding *pro se*, filed suit on or about August 1, 2007, against Polk Center ("Defendant"), alleging that she was discriminated against by the Defendant on the basis of her race and sex, and was subjected to a hostile environment. Presently pending before the Court is the Defendant's Motion for Summary Judgment.

### I. BACKGROUND

    Plaintiff was hired by Defendant on July 19, 2004 as a Psychological Services Associate. Def. Ex. A. Plaintiff was informed that this was a probationary appointment and she would be granted regular Civil Service status if her performance was acceptable at the conclusion of the probationary period. Def. Ex. A. Approximately six months later, an interim performance evaluation was conducted by Plaintiff's supervisor, Sheridan C. Kirkpatrick ("Kirkpatrick"), on January 4, 2005. Def. Ex. B. Plaintiff received an overall "Unsatisfactory"[1] rating by Kirkpatrick, who included the following comments on the evaluation form:

> Barbara has only recently begun to ask questions and seek clarification regarding work requirements. She has demonstrated a lack of attention to details that are necessary for the successful completion of her assignments. Examples are dosage amounts, schedule dates, consult lists, approval dates and plan type or format. She repeated errors after having been advised of the correction needed. Barbara has difficulty focusing on needed areas of improvement and/or constructive criticism due to competing

---

[1] An "Unsatisfactory" rating stated: "Employee fails to meet many job expectations and standards. Performance deficiencies must be corrected." Def. Ex. B.

1

> personal or health problems. Your services as a Psychological
> Services Associate trainee have not been satisfactory.

Def. Ex. B. Plaintiff was informed that (1) her probationary period was extended 90 days; (2) there would be a written work plan outlining deficient areas; (3) she was to schedule and attend a meeting for direct supervision and feedback at least once a week; (4) she was to develop and carry out an effective plan for dividing her time between two units; and (5) she had to attain a satisfactory or better rating in all areas during the next probationary period in order to attain regular Civil Service status. Def. Ex. B. Attached to Plaintiff's evaluation was a ten-step work plan Plaintiff was to adhere to on a weekly basis. Def. Ex. B.

Subsequent to her performance evaluation, Plaintiff received a letter dated January 5, 2005 notifying her that her probationary period was extended from six (6) months to nine (9) months for failing to meet acceptable performance standards. Def. Ex. C. Plaintiff was informed that during this extension of her probation, she had to reach and sustain the minimum acceptable standards and that her failure to do so could result in her dismissal. Def. Ex. C.

Dissatisfied with Kirkpatrick's review of her, Plaintiff requested the opportunity to discuss her review with Joseph Tatarek ("Tatarek"), the Director of Program Services. Def. Ex. B; Def. Ex. D. Plaintiff met with Tatarek on January 5, 2005 and claimed that her performance evaluation was "unfair" but did not provide any information to support her comments. Def. Ex. D. She did acknowledge however, that she fully understood both her job description and performance standards, as well as the work plan developed by Kirkpatrick to address her performance deficiencies. Def. Ex. D. Plaintiff was given a second opportunity on February 7, 2005 to substantiate her claim that Kirkpatrick's rating was incorrect. Def. Ex. E. Tatarek concluded that a change in Plaintiff's rating was not warranted based upon the information provided by Plaintiff and made sure she understood the work plan that was initiated to address her performance deficiencies. Def. Ex. E.

Plaintiff's performance evaluation for the period January 5, 2005 through April 14, 2005 again revealed an "Unsatisfactory" overall rating. Def. Ex. G. Kirkpatrick stated:

> Direct observation and feedback from others is that Barbara has
> demonstrated a lack of attention to details necessary for the
> successful completion of her duties. She has only recently begun
> to make necessary improvements in her involvement in psychiatric

> consults and this required a great deal of direct observation and specific feedback. This has also resulted in a hostile work relationship with her immediate supervisor and her attempts to focus attention off of herself and onto others by shifting blame. I have continued to receive concerns/complaints from other professionals regarding Barbara's poor work habits. Concerns have centered around time issues, poor attitude, poor professional appearance and lack of follow through by her. ... I have encountered diversion, hostility, blaming and attacks on my professionalism when I have attempted to address these concerns with her directly. Barbara's services as a Psychology Services Associate have not been satisfactory.

Def. Ex. G. Plaintiff verbally disagreed with the rating and refused to sign the form. Def. Ex. G.

On April 14, 2005, Plaintiff received an oral reprimand for violation of DPW Policy 7174, Unsatisfactory Work Performance, in that she did not meet the expectations of a Psychology Services Associate. Def. Ex. F. She was informed by Kirkpatrick that acts of the same or similar nature would lead to progressive disciplinary action up to and including her removal. Def. Ex. F. She was further informed that her probationary period was extended until July 13, 2005. Def. Ex. H.

Approximately one year after being hired by Defendant, Plaintiff was granted Civil Service status effective July 14, 2005 and received the only "Satisfactory"[2] performance rating during her tenure. Def. Ex. I. For the period from April 15, 2005 to June 13, 2005, Kirkpatrick stated:

> Barbara has approached her work with more of a positive attitude and has been more accepting of criticism both in review committee locations as well as in private supervisory meetings. Barbara has begun calling to discuss work related questions was well as time off issues. This is an improvement over past performance. There have been no reports of problems or complaints from other employees this review. I have received complimentary comments about Barbara's work in Meadowside and we have discussed her changing assignment. Your work as a Psychological Services Associate has improved and your work performance is deemed satisfactory. You will attain regular Civil Service status on July 14, 2005.

Def. Ex. I.

---

[2]A "Satisfactory" rating stated: "Employee meets the expectations and standards of the employee's job in a fully adequate way." Def. Ex. I.

Approximately seven months later, on February 9, 2006, an administrative meeting was held regarding Plaintiff's performance. Def. Ex. J. Notes from the meeting highlighted Plaintiff's demeanor:

> Important to note is Barbara's demeanor and her behavior throughout the meeting. From the outset Barbara sat slumped in her chair and facing away from Joe, Gay and me. She wore her hat and coat throughout the meeting and involved herself with activities such as clipping her fingernails, eating candy and pushing papers away in response to Questions about them. Her general behavior and attitude ranged from aloof and uncaring to defiant and purposely quiet.

Def. Ex. J. Written instructions for various components of her job were reviewed with Plaintiff in detail at the meeting but it was noted that she "acted disinterested and aloof during this discussion and had to be asked specific questions on more than one occasion." Def. Ex. J.

Plaintiff's performance evaluation for the period from July 14, 2005 to March 30, 2006 resulted in an "Unsatisfactory" overall performance rating. Def. Ex. K. Under additional comments, Kirkpatrick noted the following:

> Barbara's overall problems with accepting responsibility for assigned tasks have lead to incomplete results that have in turn lead to a lack of responsibility to assume blame, to correct it and to move on. Instead Barbara tends to shift blame, duck responsibility and not make an effort to improve. This pattern has become worse over the past several months and she has reverted back to problems occurring prior to her extensions in probation. Barbara did attain satisfactory performance as she neared the end of her last extension of probation and this resulted in gaining full Civil Service status in July 2005. Unfortunately she has not sustained that same satisfactory performance level and problems began to develop prior to her move from the Meadowside unit. She has countered attempts to correct these problems with threats to report the facility to outside agencies on the basis of unfair treatment and discrimination. Barbara has a serious problem with accepting criticism and authority.

Def. Ex. K. A corrective work plan was attached to this evaluation addressing the areas of Plaintiff's unsatisfactory performance and setting forth areas of expected improvement. Def. Ex. K. She was also presented with Employee Performance Standards. Def. Ex. K. Plaintiff refused to sign all three documents. Def. Ex. K and L.

On May 3, 2006, Plaintiff received a written reprimand for violation of DPW Policy 7174, Unsatisfactory Work Performance, based upon her "Unsatisfactory" rating for the period of

4

July 14, 2005 through March 30, 2006. Def. Ex. M. Plaintiff received this written reprimand for her unsatisfactory performance evaluation and was informed that she would be subject to progressive disciplinary action up to and including termination if her performance did not improve. Def. Ex. M.

Plaintiff was subsequently suspended effective May 30, 2006 for failing to obtain proper consent for treatment plans for the individuals on her caseload and implementing treatment plans without proper consent. Def. Ex. N. She was advised that an investigation would be conducted during this suspension. Def. Ex. N. This investigation revealed that, in addition to issues involving the treatment plans, Plaintiff had also failed to follow DPW policy and procedures on a number of different occasions. Def. Ex. O. For example, it was alleged that Plaintiff had failed keep updated progress notes for multiple individuals, despite having been instructed to do so during a meeting on February 9, 2006 and during discussion of her April 2006 work plan, and that she had failed to train direct care staff on Behavior Support Plans for her caseload after being counseled on March 19, 2006 regarding such requirement. Def. Ex. O ¶ 3(a) and (f). It was further alleged that her collection sheets and methods were in "total disarray" and she had "failed to correct this" despite having been advised to do so on February 9, 2006 and again in connection with the work plan issued on April 25, 2006. Def. Ex. O ¶ 3(g).

A pre-disciplinary conference was subsequently held on August 21, 2006 regarding the results of the investigation, and the Defendant found the Plaintiff's responses to be unacceptable. Def. Ex. P. Plaintiff was informed that she was being removed from her position effective August 23, 2006. Def. Ex. P.

As a result of her termination, Plaintiff brought suit against Defendant alleging that she had been discriminated against by the Defendant on the basis of her race and sex, and was subjected to a hostile environment. Defendant has moved for summary judgment with respect to her claims.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

### III. DISCUSSION

Plaintiff claims Defendant discriminated against her because of her race.[3] I shall analyze Plaintiff's racial discrimination claim pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et. seq. Under Title VII, it is unlawful for an employer to refuse to hire or otherwise discriminate against any individual with respect to his or her compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin. See Weston v. Commonwealth of Pennsylvania, Dept. of Corrections, 251 F.3d 420, 425 (3rd Cir. 2001), citing 42 U.S.C. § 2000e-2(a)(1).[4]

Under the familiar burden-shifting test articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and further refined in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1983), the

---

[3]At oral argument on Defendant's motion for summary judgement, Plaintiff limited her claims to discrimination on the basis of her race. See Hearing Transcript [Doc. No. 29] p. 15.

[4]The Third Circuit has consistently applied the same legal standard in analyzing claims brought pursuant to Title VII and the Pennsylvania Human Relations Act ("PHRA"). Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 317 n.3 (3rd Cir. 2000); Jones v. School District of Philadelphia, 198 F.3d 403, 409 (3rd Cir. 1999). Therefore, to the extent Plaintiff's Complaint could be construed to include a PHRA claim, our analysis is equally applicable to any such claim.

plaintiff has the initial burden of establishing a prima facie case of discrimination, the substance of which will vary depending on the type of claim; if the plaintiff is successful, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment decision. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3rd Cir. 2000); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3rd Cir. 1997). If the employer proffers a legitimate, non-discriminatory reason for its action, the plaintiff must then demonstrate that the proffered reason was merely a pretext for unlawful discrimination. Goosby, 228 F.3d at 319, citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133 (2000); Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 n.4 (3rd Cir. 1999).

Here, for the purposes of this Motion, Defendant concedes that Plaintiff has established a prima facie case of race discrimination related to her termination in August 2006. See Hearing Transcript p. 14. Defendant argues that summary judgment is appropriate based upon the failure of Plaintiff to have raised a triable issue of fact relative to pretext.

In order to defeat Defendant's summary judgment motion, Plaintiff must point to some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3rd Cir. 2000); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 331 (3rd Cir. 1995).

A plaintiff can establish the first prong by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994) (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3rd Cir. 1992)). A plaintiff may not, however, "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3rd Cir. 1997) (quoting Fuentes, 32 F.2d at 765). In other words, the plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it

7

cannot have been the employer's real reason." Keller, 130 F.3d at 1109.

To satisfy the second prong, the plaintiff must point to evidence "that proves ... discrimination in the same way that critical facts are generally proved -- based solely on the natural probative force of the evidence." Keller, 130 F.3d at 1111. The plaintiff can establish the second prong by showing that the employer in the past subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not within his class more favorably, or that the employer discriminated against other members of his protected class. Fuentes, 32 F.3d at 765.

A review of the Plaintiff's "Statement of Materials [sic] Facts-Rebuttal from Plaintiff" [Doc. No. 23], "Motion Against Summary Judgment" [Doc. No. 25] and "Affidavit" [Doc. No. 26][5], reveals that her pretext argument is based on the following contentions: (1) that her performance was not, in fact, deficient in some areas; (2) to the extent any performance deficiencies may have existed, they were due to inadequate training and/or direction; and (3) Caucasion employees, whose performance was similar to hers, were not subject to adverse employment actions.

Scattered throughout the Plaintiff's filings in opposition to the Defendant's motion is her contention that her performance was not deficient in certain areas identified by the Defendant. For example, in her Rebuttal, Plaintiff denies that her performance during her initial probationary period was unsatisfactory, stating "[t]his is not true." See Plaintiff's Rebuttal ¶ 19.[6] Similarly, for the time period from January 5, 2005 to April 14, 2005, Plaintiff disagrees with her unsatisfactory rating, stating: "in my eyes I was doing fine, [u]nsatisfactory justified in writing not in truth." Plaintiff's Rebuttal ¶ 46. By way of further example, Plaintiff disagrees with the Defendant's characterization of her ongoing communications problems and attaches a statement signed by twelve direct care staff members stating that she had been "very professional" in her

---

[5]At oral argument, I gave the Plaintiff the opportunity to supplement the record with an affidavit setting forth all the facts and/or evidence which she believed demonstrated pretext. See Hearing Tr. p. 24. Plaintiff filed her affidavit on November 5, 2008.

[6]Plaintiff's Rebuttal is replete with denials that her performance was deficient. See Rebuttal ¶¶ 17-18; 35; 39; 41; 43; 47-49; 52; 57; 66-71; 73; 75-76.

8

interactions with them.  See Affidavit, Exhibit behind p. 10.

It is well settled that an employee's subjective personal judgment of her own performance is not evidence of pretext.  See e.g., Billet v. CIGNA Corp., 940 F.2d 812, 825 (3rd Cir. 1991) ("[T]he fact that an employee disagrees with an employer's evaluation [of her performance] does not prove pretext."),abrogated on other grounds by St. Mary's Honor Center v. Hicks, 509 U.S. 502, 517-18 (1993); Bernhard v. Nexstar Broadcasting Group, Inc., 146 Fed. Appx. 582, 586 (3rd Cir. 2005) (plaintiff's reliance on his own sworn declaration to contradict defendant's view of his work performance did not raise an issue of pretext); Fatzinger v. Lehigh Valley Hosp., 130 F. Supp. 2d 674, 679 (E.D.Pa. 2001) ("[I]t is well-established that neither a simple denial of the charges against her, nor her own rosier perception of her performance, saves Plaintiff from summary judgment.").  Moreover, the direct care staff's opinions relative to Plaintiff's communications skills is irrelevant in a pretext analysis; what matters is the perception of the decisionmaker.  Billet, 940 F.2d at 825; Acampora v. Konica Business Machines USA, Inc., 1997 WL 214800 at *7 (E.D.Pa. 1997) (co-worker's belief regarding plaintiff's performance is not indicative of pretext; the focus is on the perception of the decisionmaker).

Plaintiff next argues that any performance deficiencies that existed were the result of inadequate training and/or direction by her supervisor and she was deliberately "set up to fail."  See Plaintiff's Rebuttal ¶¶ 10-11; 14-16; 125; see also Affidavit pp. 3-5; Motion Against Summary Judgment pp. 1-2.  In support of this argument, Plaintiff attached, *inter alia*, copies of her handwritten notes behind page 3 of her Affidavit summarizing her meeting with Tatarek on February 7, 2005 wherein she complained about the purported lack of training.  See Affidavit, Exhibits behind p. 3.  She also attached copies of her work calendar for the months of September 2004 and October 2004 which contain her notations of "No training" on certain days.  See Affidavit, Exhibits behind p. 3.  Plaintiff's perception that her training was inadequate and/or incomplete, without more, is insufficient to demonstrate pretext.  See e.g., Folsom v. Superior Court of New Jersey, Middlesex Vicinage, 2008 WL 1782236 at *9 (D.N.J. 2008) (holding that plaintiff failed to discredit defendant's reasons for his termination where he claimed that, *inter alia*, he received inadequate mentoring and his supervisors caused unwelcome stress which caused his poor performance); Gladysiewski v. Allegheny Energy Serv. Corp., 2007 WL

9

1112580 at *17 (W.D.Pa. 2007) (finding that defendant's failure to follow through with promised training did not support pretext argument but only led to the inference that defendant, for whatever reason, did not provide all the promised support, not that it was unimportant for plaintiff to meet the company's expectations as outlined in the action plan), appeal dismissed, 282 Fed. Appx. 979 (3rd Cir. 2008).

Finally, Plaintiff claims that Caucasion employees who were inadequate performers were not subjected to adverse employment actions. Plaintiff points to Paul Bensur ("Bensur") and Tracy Sharp ("Sharp") as appropriate comparators in this regard. See Plaintiff's Rebuttal ¶¶91; 105. Evidence that an employee was disciplined more severely than an employee from a non-protected class is relevant only if the comparators and the plaintiff are "similarly situated." Maull v. Div. of State Police, 39 Fed. Appx. 769, 773 (3rd Cir. 2002), citing Fuentes, 32 F.3d at 765.). As stated by the court in Saillam v. Norfolk, 2008 WL 5286836 (W.D.Pa. 2008):

> ... Although "similarly situated" does not mean "identically situated," the plaintiff generally must demonstrate that he was similar to the alleged comparators in all relevant aspects. *See Williams v. Potter*, Civil Action No. 07-02, 20087 WL 282349, at *3 (W.D.Pa. Jan. 21, 2008); *Red v. Potter*, 211 F. App'x 82, 84 (3rd Cir. 2006); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). In the discipline context, a plaintiff must show that the alleged comparator's acts "were of comparable seriousness to his own infraction, and that the [comparator] engaged in the same conduct without such differentiating or mitigating circumstances as would distinguish the [comparator's] conduct or the employer's resulting treatment of [him]." *Tyler v. SEPTA*, No. Civ. A. 99-4825, 2002 WL 31965896, at *3 (E.D.Pa. Nov. 8, 2002) (alterations in original), *aff'd*, 85 F. App'x 875 (3rd Cir. 2003); *see also Jackson v. Bob Evans-Columbus*, No. 2:04cv559, 2006 WL 3814099, at *7 (W.D.Pa. Dec. 22, 2006); *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 603 (M.D.Pa. 2002) ("Showing that an employee is similarly situated is not easy task."). Whether alleged comparators are indeed similarly situated is a case-specific analysis, and one which is appropriate for the district court to evaluate at the summary judgment stage. *Maull*, 39 F. App'x at 769 (citing *Simpson*, 142 F.3d at 645).

Saellam, 2008 WL 5286836 at *9.

Plaintiff offers nothing beyond her own opinion that either of the alleged comparators were poor performers. Defendant has submitted the performance evaluations for Bensur and Sharp. Bensur received a "Satisfactory" rating throughout his probationary period, was granted regular Civil Service status and his performance continued to remain satisfactory thereafter. Def.

10

Exs. R and U. Sharp's performance evaluation reflected a "Commendable" rating, which indicated that she met and frequently exceeded job expectations and standards. Def. Ex. V.

Plaintiff, however, challenges the accuracy of Bensur's performance evaluations claiming they are "not true" and that his performance evaluations "were falsified concerning his work performance." See Plaintiff's Rebuttal of Defendant's Material Facts [Doc. No. 24] ¶¶ 92, 108. Plaintiff does not, however, present any evidence to support this bare, conclusory allegation. See Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982) (non-moving party may not rely merely upon bare assertions, conclusory allegations or suspicions); Jones v. Hendricks, 173 Fed. Appx. 180, 183 (3rd Cir. 2006) (plaintiff failed to meet his burden of showing that a genuine issue for trial existed where he failed to provide support for his averment that defendant falsified documents); Javornick v. United Parcel Service, Inc., 2008 WL 4462280 at *7 (W.D.Pa. 2008) (concluding that no reasonable juror would find any evidentiary support for the plaintiff's contention that defendant falsified documents where plaintiff presented no evidence in support of such claim other than her own unsupported accusations).

For the reasons set forth above, Plaintiff has failed to raise a triable issue of fact with respect to pretext. Consequently, summary judgment will be entered in favor of Defendant.

**IV. CONCLUSION**

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA A. JONES,<br><br>   Plaintiff,<br><br>     v.<br><br>POLK CENTER,<br><br>   Defendant. | Civil Action No. 07-204 Erie |

## ORDER

AND NOW, this 11th day of March, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment [Doc. No. 17] is GRANTED. JUDGMENT is hereby entered in favor of the Defendant, Polk Center against the Plaintiff, Barbara A. Jones.

The clerk is hereby directed to mark the case closed.

                s/ Sean J. McLaughlin
                United States District Judge

cm: All parties of record.